IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–00245–EWN

RONALD D. LEVENS,

      Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.

---

**ORDER AND MEMORANDUM OF DECISION**

---

      This is a social-security benefits appeal under 42 U.S.C. § 405(g) (2005).  Plaintiff Ronald

D. Levens challenges the final decision of the Commissioner of Social Security (the

"Commissioner"), denying his application for Social Security Disability Insurance (SSDI) benefits.

Jurisdiction is based on 42 U.S.C. § 405(g).

**FACTS**

*1.*    *Medical Evidence*

      Plaintiff was born on August 28, 1958, and was forty years old at the onset of his alleged

disability.  (Admin R. at 52 [filed May 6, 2005] [hereinafter "Admin. R."].)  Plaintiff graduated

from high school and has worked in the vocationally relevant past as a radiator repairman.  (*Id.* at

-1-

269–70.)  Plaintiff alleges an inability to work beginning November 14, 1998, due to arthritis and

ankylosing spondylitis, inflammatory arthritis of the spine.  (*Id*. at 78, 262–63.)  Plaintiff acquired

sufficient quarters of coverage to remain insured through December 31, 1999.  Thus, Plaintiff

must demonstrate that he was under a disability prior to expiration of his insured status.  (*Id*. at

23; Pl.'s Opening Br. at 4 [filed June 29, 2005] [hereinafter "Pl.'s Br."].)

       *a.*      ***Medical Evidence Dated Prior to the Expiration of Plaintiff's Insured Status —***
              ***December 31, 1999***

In September 1992, Dennis J. Boyle, M.D., diagnosed Plaintiff with ankylosing

spondylitis.  (*Id*. at 157.)  On November 4, 1994, Jeffrey Edelson, Ph.D, performed a

psychological evaluation on Plaintiff.  (*Id*. at 161–63.)  Dr. Edelson opined that Plaintiff's

intelligence score was in the "low average range of intellectual functioning."  (*Id*. at 162.)  Dr.

Edelson determined that Plaintiff did not have "significant cognitive dysfunction."  (*Id*. at 163.)

On March 26, 1997, Robert C. Hays, M.D., evaluated Plaintiff.  (*Id*. at 178.)  Dr. Hays

noted that Plaintiff had chronic neck and back pain and patellofemoral joint disease in his knees.

(*Id.*)  On May 13, 1997, Gilbert McDonough, M.D., evaluated Plaintiff.  (*Id*. at 186–90.)  Dr.

McDonough noted that Plaintiff was overweight and had "difficulty removing his socks because

of his difficulty bending his back and knees."  (*Id*. at 187.)  Dr. McDonough diagnosed Plaintiff

with advanced ankylosing spondylitis.  (*Id*. at 189.)

On November 20, 1999, Alan L. Rosenberg, M.D., reported that he evaluated Plaintiff

every few months.  (*Id*. at 219.)  Dr. Rosenberg noted that Plaintiff had severe pain in his spine

involving the neck, thoracic spine, and the lumbar areas.  (*Id.*)  Dr. Rosenberg opined that Plaintiff

had abnormalities and marked limitation of motion and pain due to a deconditioned state induced

by pain from his ankylosing spondylitis. (*Id.*) Dr. Rosenberg opined that Plaintiff "would be

unable to [sic] any job, which required lifting, pushing, pulling, prolonged standing, or even

prolonged sitting because of the stiffness that he develops in his back." (*Id.* at 220.)

> **b.    *Medical Evidence Dated After the Expiration of Plaintiff's Insured Status —*
> ***December 31, 1999***

On December 14, 2000, Dr. Rosenberg opined that Plaintiff was significantly

deconditioned because of ankylosing spondylitis. (*Id.* at 218.) Dr. Rosenberg opined that

Plaintiff appeared to be "somewhat depressed." (*Id.*)

On February 6, 2001, Dr. Rosenberg referred Plaintiff to Chicago Creek Clinic for follow-

up care. (*Id.* at 217.) Dr. Rosenberg noted that Plaintiff could not afford some medications and

office visits. (*Id.*)

In January 2002, J. Frederic Prinzing, Jr., M.D., performed a consultative medical

examination. (*Id.* at 222–29.) Dr. Prinzing opined that Plaintiff ambulated without difficulty. (*Id.*

at 222.) "There is a slight waddling of ambulation and the patient states this causes him pain

primarily in his hips and in his back." (*Id.*) Dr. Prinzing noted that Plaintiff had difficulty with

generalized pain in the dorsal and lumbosacral spine and hips. (*Id.* at 223.)

On November 5, 2001, Plaintiff reported that he was getting "good or better control of his

symptoms" with his medication. (*Id*. at 240.) On January 13, 2003, Rik Santaguida, M.D.,

evaluated Plaintiff and determined that Plaintiff was not in any distress. (*Id.* at 235.) Dr.

Santaguida changed Plaintiff's medication in an effort to cut the cost of the medication. (*Id.*)

On February 25, 2003, Dr. Santaguida completed a form in which he opined that in an eight hour day, Plaintiff could: (1) lift and carry ten pounds occasionally and less than ten pounds frequently; (2) stand and walk for four hours when alternating one hour of standing and walking with one hour of sitting; (3) sit six hours; (4) occasionally twist, crouch, and climb stairs; and (5) never stoop and climb ladders.  (*Id.* at 230–32.)  Dr. Santaguida opined that Plaintiff's impairments would cause him to be absent from work "about once a month."  (*Id.* at 232.)

In November 2003, Dr. Santaguida wrote a letter to Plaintiff's lawyer regarding Plaintiff's condition.  (*Id.* at 252–54.)  Dr. Santaguida noted Plaintiff's history of ankylosing spondylosis. (*Id.* at 253.)  Dr. Santaguida opined that the majority of Plaintiff's changes are in the "thoracic spine only.  The disease seems to spare his cervical and lumbar spine."  (*Id.*)  Dr. Santaguida opined that Plaintiff's most significant condition was his depression and his inability to function in society.  (*Id.* at 254.)  Dr. Santaguida stated that Plaintiff's osteoarthritis of the lower extremities was "not of any significant impairment."  (*Id.*)

## 2.      *Procedural History*

Plaintiff applied for disability insurance benefits on August 21, 2001.  (*Id.* at 52–54.)  The Social Security Administration denied his application on February 4, 2002.  (*Id.* at 33.)  The Administrative Law Judge ("ALJ") held a hearing on Plaintiff's claim on April 17, 2003, at which Plaintiff and a vocational expert testified.  (*Id.* at 22–30; 259–87.)

Plaintiff testified that he was fired from his last job as a radiator repairman and has not worked for pay since that time.  (*Id.* at 270.)  Plaintiff testified that he could stand and walk a total of four hours in an eight hour day if he was able to take breaks.  (*Id.* at 270–71.)  Plaintiff

testified that he could occasionally reach, push, pull, twist, crouch, and climb stairs.  (*Id.* at 271.)
Plaintiff stated that he could never stoop or climb ladders and that he needed to avoid moderate
exposure to extreme temperatures.  (*Id.*)

Plaintiff testified that he experienced pain in his back, knees, and hips.  (*Id.* at 272–73.)
Plaintiff testified that he took over-the-counter Tylenol and cayenne pepper pills.  (*Id.* at 273.)
Plaintiff stated that he did not take any prescription pain medication because he feared he would
get addicted.  (*Id.*)  Plaintiff testified that the took medication to help him sleep and anti-
depressant medication.  (*Id.* at 276–77.)

Plaintiff testified that he lives with his wife and two children, ages seventeen and thirteen.
(*Id.* at 274.)  He stated that on "bad days" he "can't hardly even move."  (*Id.*)  Plaintiff testified
that he has bad days once a month.  (*Id.*)  He stated that on good days he (1) does dishes and
laundry; (2) goes grocery shopping; (3) cooks; (4) does yard work; and (5) shovels snow.  (*Id.* at
275–76.)  Plaintiff testified he could write for fifteen minutes at a time.  (*Id.* at 280.)

James Hardaway, a vocational expert, testified at the hearing.  (*Id.* at 281–85.)  Hardaway
classified Plaintiff's past relevant work as a radiator repairman as skilled and requiring medium to
heavy exertion.  (*Id.* at 282.)  The ALJ posed a hypothetical to Hardaway.  (*Id.* at 282–83.)  The
ALJ asked Hardaway to consider whether an individual with Plaintiff's education and work
history and the following residual functional capacity ("RFC") could perform work previously
performed by Plaintiff:

> occasionally lift and carry [ten] pounds, could frequently lift and carry less than
> [ten] pounds, could stand [thirty] minutes at a time, walk [sixty] minutes at a time,
> sit [sixty] minutes at a time, but could stand and walk a total of four hours in an

> eight-hour day.  In addition, the person would need the ability to shift positions
> from sitting or standing/walking at will.  The person could occasionally twist,
> crouch, climb stairs, never stoop or climb ladders, could occasionally reach, push
> and pull, would need to avoid moderate exposure to extremes of cold and heat.

(*Id.*)  Hardaway responded that such an individual could not perform Plaintiff's past relevant work as a radiator repairman, but could perform other sedentary unskilled work such as: (1) call out operator and (2) surveillance system monitor.  (*Id.* at 283.)  Hardaway testified that most employers of unskilled workers do not allow individuals to take naps during the day or have more than one absence per month.  (*Id.* at 284–85.)

The ALJ issued a decision on August 2, 2003.  (*Id.* at 22–30.)  The ALJ determined Plaintiff was not disabled because he retained the RFC to perform the full range of sedentary work.  (*Id.* at 30.)  The ALJ added that such work exists in significant numbers in the national economy.  (*Id.*)

In reaching his conclusion, the ALJ first found that Plaintiff had not engaged in substantial gainful activity since November 14, 1998.  (*Id.* at 23, 29.)  Next, the ALJ determined that Plaintiff has arthritis and ankylosing spondylitis.  (*Id.*)  While these impairment are "severe," the ALJ determined that the impairments do not meet or equal the criteria of any of the established listings.  (*Id.* at 24.)  Next, the ALJ determined Plaintiff's RFC.  In determining Plaintiff's RFC, the ALJ found that Plaintiff was not credible because Plaintiff

> asserts that he suffers from debilitating pain and exhaustion and cannot sustain
> work.  However, the medical record contains minimal objective findings of some
> loss of motion and only degenerative changes of the thoracic spine with intact
> body height, alignment and curvature, on the most recent [X]-rays.  The [Plaintiff]
> takes no pain medication other than over-the-counter medicines.  He testified that
> he must nap two or more times each day and yet this complaint is not found in the

> medical record nor is this a recommendation of any treatment provider.  The
> [Plaintiff] himself admits that he does some household chores, including lawn
> mowing and snow shoveling.  And [sic] Dr. Santaguida restricts [Plaintiff] to what
> is generally a sedentary range of work.

(*Id.* at 26.)  Based on the evidence presented to him, the ALJ issued his RFC determination.  The

ALJ concluded that:

> [Plaintiff] retains the [RFC] lift and carry ten pounds occasionally and less than ten
> pounds frequently, stand thirty minutes at a time and walk sixty minutes at a time
> for a total of standing and walking four hours out of an eight hour day and sit one
> hour at a time for a total of six hours out of an eight hour day.  The [Plaintiff] is
> able to occasionally twist, crouch and climb but it not able to stoop and climb
> ladders.  He is able to occasionally reach, push and pull but needs to avoid
> temperature extremes.

(*Id.* at 26.)  In accord with this RFC, the ALJ determined that Plaintiff could not perform his past

relevant work.  (*Id.*)  The ALJ determined that there are a significant number of jobs in the

regional and national economy that Plaintiff could still perform, and therefore the ALJ found that

Plaintiff was not disabled.  (*Id.* at 27–29.)  Plaintiff appealed this decision, and on December 3,

2004, the Appeals Council declined to review the ALJ's determination.  (*Id.* at 7–9.)  Thus, the

ALJ's decision became the Commissioner's final decision for the purposes of the present appeal.

Plaintiff filed a complaint in this court on February 7, 2005, challenging the Commissioner's denial

of disability insurance benefits.  (Compl. [filed Feb. 7, 2004].)

## ANALYSIS

### 1.    *Standard of Review*

Section 405(g) of the Social Security Act establishes the scope of this court's review of

the Commissioner's denial of disability insurance benefits.  *See* 42 U.S.C. § 1383(c)(3) (2004)

(incorporating review provisions of 42 U.S.C. § 405[g]).  Section 405(g) provides, in relevant

part, that

> [t]he findings of the Commissioner of Social Security as to any fact, if supported
> by substantial evidence, shall be conclusive, and where a claim has been denied by
> the Commissioner of Social Security or a decision is rendered under subsection (b)
> of this section which is adverse to an individual who was a party to the hearing
> before the Commissioner of Social Security, because of failure of the claimant or
> such individual to submit proof in conformity with any regulation prescribed under
> subsection (a) of this section, the court shall review only the question of
> conformity with such regulations and the validity of such regulations.

42 U.S.C.A. § 405(g).  Thus, this court's review is limited to determining whether the record as a

whole contains substantial evidence supporting the Commissioner's decision.  *See id.*; *Hamilton v.*

*Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992).  The court must

uphold the Commissioner's decision if it is supported by substantial evidence.  *See Dollar v.*

*Bowen*, 821 F.2d 530, 532 (10th Cir. 1987).  This court cannot re-weigh the evidence nor

substitute its judgment for that of the ALJ.  *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir.

1987).  That does not mean, however, that my review is merely cursory.  To find that the ALJ's

decision is supported by substantial evidence, the record must include sufficient relevant evidence

that a reasonable person might deem adequate to support the ultimate conclusion.  *Frey v. Bowen*,

816 F.2d 508, 512 (10th Cir. 1987).  A decision is not based on substantial evidence if it is

overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting

it.  *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985).  The ALJ's decision is also subject to

reversal for application of the wrong legal standard.  *Bernal v. Bowen*, 851 F.2d 297, 299 (10th

Cir. 1988); *Frey*, 816 F.2d at 512.

## 2.      *Evaluation of Disability*

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than sixty-five years of age, and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The Social Security Act defines a disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004). In proving his disability, a plaintiff must make a *prima facie* showing that he is unable to return to prior work he has performed. *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988). Once the claimant meets that burden, the Commissioner must show that the claimant can do other work activities and that the national economy provides a significant number of jobs which the claimant could perform. *Frey,* 816 F.2d at 512.

The Commissioner has established a five-step process to determine whether a claimant qualifies for disability-insurance benefits. *See Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987) (describing five-step analysis); 20 C.F.R. § 404.1520 (2004). A claimant may be declared disabled or not disabled at any step; and, upon such a determination, the subsequent steps may be disregarded. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988); 20 C.F.R. § 404.1520(a). First, the claimant must demonstrate that he is not currently involved in any substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment (or combination of impairments) which limits his physical or mental

ability to do basic work activities. *Id.* § 404.1520(c). At the third step, if the impairment matches

or is equivalent to established listings, then the claimant is judged conclusively disabled. 20

C.F.R. § 404.1520(d). If the claimant's impairments are not equivalent to the listings, the analysis

proceeds to the fourth step. At this stage, the claimant must show that the impairment prevents

him from performing work he has performed in the past. *See Williams,* 844 F.2d at 751 (citations

omitted). If the claimant is able to perform his previous work, he is not disabled. *Id.*; 20 C.F.R. §

404.1520(e). This step requires a three phase analysis.

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual
> functional capacity (RFC), and in the second phase, he must determine the physical
> and mental demands of the claimant's past relevant work. In the final phase, the
> ALJ determines whether the claimant has the ability to meet the job demands found
> in phase two despite the mental and/or physical limitations found in phase one. At
> each of these phases, the ALJ must make specific findings.

*Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted). The fifth step

requires the Commissioner to demonstrate that the claimant has the RFC to perform other work

based on the claimant's age, education, past work experience, and there is availability of that type

of work in the national economy. *See Williams,* 844 F.2d at 751; 20 C.F.R. § 404.1520(f).

**3.      *Disability Determination***

Plaintiff alleges that the ALJ erred at step five of the sequential evaluation. (Pl.'s Br. at

7–12.) Plaintiff asserts that the ALJ did not demonstrate that Plaintiff retains the RFC to perform

"other jobs in the national economy." (*Id.* at 7.) Specifically, Plaintiff contends that the ALJ

erred by (1) failing to develop the record fully with respect to his depression and mental status

issues; (2) failing to apply the correct legal standard to reject or weigh the opinion of Dr.

Rosenberg;[1] and (3) not properly articulating the specific reasons for finding Plaintiff not fully credible. (*Id.* at 8.)  I address Plaintiff's arguments in turn.

### a.     Plaintiff's Depression and Mental Health Issues

Plaintiff alleges that the ALJ did not fully develop the record with respect to Plaintiff's depression and mental status issues and therefore the ALJ's decision at step five was erroneous. (*Id.* at 8–10.)  Specifically, Plaintiff relies on (1) supplemental reports of Dr. Santaguida that Plaintiff supplied to the Appeals Council; (2) a report issued by Dr. Lipson, dated March 1, 2005; and (3) the results of a consultative examination conducted in November 1994.  (*Id.*)

First, Plaintiff asserts that Dr. Santaguida's November 2003 report, which Plaintiff submitted for the first time to the Appeals Council, conclusively establishes that Plaintiff's mental condition prevents him from working.  (Pl.'s Br. at 8–9.)  In reviewing the ALJ's findings, I must consider the entire record.  *Williams*, 844 F.2d at 750.  Evidence submitted to the Appeals Council becomes part of the record and I must assess it in evaluating the ALJ's denial of benefits under the substantial evidence standard.  *Chamber v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004).  A treating physician may provide a retrospective diagnosis of a plaintiff's condition, but the relevant analysis is whether the plaintiff was actually disabled prior to the expiration of his insured status.  *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348–49 (10th Cir. 1990).  Here, Dr. Santaguida's supplemental report is part of the record, but it does not relate to the time period before the expiration of Plaintiff's insured status.  Dr. Santaguida submitted the

---

[1]Plaintiff withdrew his argument with respect to Dr. Rosenberg's opinions.  Thus, I do not need to address this argument.  (Pl.'s Reply Br. [filed Sept. 6, 2005] [hereinafter "Pl.'s Reply"].)

supplemental report on November 8, 2003, almost four years after the expiration of Plaintiff's insured status. (Admin. R. at 254.) Dr. Santaguida opined that Plaintiff's depression is the "most significant of his conditions which interferes with his ability to function in society." (*Id.*) Dr. Santaguida's opinion and diagnosis do not apply to the time period beginning on or before December 31, 1999. Accordingly, the ALJ did not err in failing to consider Plaintiff's mental issues as highlighted by Dr. Santaguida's November 8, 2003 report.

Second, the additional evidence from Dr. Lipson was not before the ALJ or the Appeals Council. Plaintiff submitted Dr. Lipson's opinion for the first time as an attachment to Plaintiff's brief. (Pl.'s Br., Attachment C [Psychological Exam].) While additional evidence submitted to the Appeals Council becomes part of the administrative record reviewed on appeal, evidence submitted for the first time to the District Court cannot be considered as part of the record. *See O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994).

Finally, Plaintiff's reliance on his intelligence examination scores in 1994 is misplaced. (Pl.'s Br. at 8.) Dr. Edelson opined that Plaintiff's intelligence score was in the "low average range of intellectual functioning." (Admin. R. at 162.) Further, Dr. Edelson determined that Plaintiff did not have "significant cognitive dysfunction." (*Id.* at 163.) This evidence does not reveal severe, much less disabling mental limitations during the time period relevant to this case. Thus, the ALJ's failure to rely on this examination was not erroneous. Accordingly, the ALJ did not err in failing to consider Plaintiff's depression and mental health issues when he determined that Plaintiff was not disabled at step five of the sequential evaluation.

**b.**   ***ALJ's Credibility Determination***

Plaintiff alleges that the ALJ's credibility determinations are "deficient and based on a misstatement of the record evidence." (Pl.'s Br. at 11.) Specifically, Plaintiff asserts that "[t]he record evidence compels a finding that [Plaintiff's] sporadic medical treatment was based on lack of financial resources or health insurance, not for other reasons that might impact his credibility." (Pl.'s Br. at 12.) "Credibility is the province of the ALJ." *Hamilton*, 961 F.2d at 1499. This court generally treats credibility determinations made by the ALJ as binding upon review. *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988). Further, a plaintiff's credibility may be questioned because of inconsistencies between the plaintiff's testimony and other evidence in the record. *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988).

The ALJ did not find Plaintiff credible because his testimony was inconsistent with the evidence in the record. (Admin. R. at 26.) Specifically, the ALJ determined that while Plaintiff asserts he cannot sustain work, "the medical record contains minimal objective findings of some loss of motion and only degenerative changes of the thoracic spine with intact body height, alignment and curvature, on the most recent [X]-rays. The [Plaintiff] takes no pain medication other than over-the-counter medicines." (*Id.*) Further, Plaintiff's lack of medical treatment and pain medication during the time period relevant to this appeal is relevant to the ALJ's credibility determination. *See Gossett*, 862 F.2d at 807 (holding that the ALJ properly determined that the claimant lacked credibility when he failed to seek medication for joint pain). Accordingly, the ALJ's credibility determination was not erroneous.

Plaintiff asserts that "the ALJ incorrectly stated that [Plaintiff] took no pain medication other than over-the-counter medicines.  The ALJ's misstatement in that regard may have played a role in his adverse credibility determination."  (Pl.'s Br. at 12.)  Plaintiff testified that the only pain medication he took was Tylenol and cayenne-pepper pills.  (Admin. R. at 273.)  Plaintiff testified that within the three months prior to the April 2003 hearing before the ALJ, he took: (1) Amitriptyline to help him sleep; (2) Clorexolene as a muscle relaxer; (3) Idnomethacin for inflammation; and (4) Paxil for depression.  (*Id.* at 277.)  Thus, the ALJ correctly determined that, prior to the expiration of Plaintiff's insured status, the record does not indicate that Plaintiff took medication for his pain or any other ailment.

Additionally, Plaintiff contends that the Appeals Council remanded his supplemental security income ("SSI") claim because the ALJ incorrectly stated that Plaintiff did not take medication other than over-the-counter medication.  (Pl.'s Br. at 12.)  While the Appeals Council did remand Plaintiff's SSI claim because Plaintiff testified that he took medication for his depression, Plaintiff's testimony was only relevant to a time period after the expiration of Plaintiff's insured status.  (Admin. R. at 277.)  Thus, the ALJ's conclusion that Plaintiff did not take medication other than over-the-counter medication was appropriate with respect to Plaintiff's SSDI claim.  Accordingly, Plaintiff's arguments as to these points are unavailing.

***4.***        ***Conclusions***

Based on the foregoing it is therefore

ORDERED that the Commissioner's decision is AFFIRMED.

Dated this 27th day of October, 2005

BY THE COURT:

 /s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge
